## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SCATURO, SCOTT BUBNICK, JOSEPH DAVIDOV, STEVEN MARDAKHAEV, AND JONATHAN MADAR, *individually and on behalf of all others similarly situated*,<br><br>               Plaintiffs,<br><br>      v.<br><br>FANATICS, INC.; FANATICS, LLC; FANATICS COLLECTIBLES INTERMEDIATE HOLDCO, INC.; FANATICS SPV, LLC; FANATICS HOLDINGS, INC.; MAJOR LEAGUE BASEBALL; MAJOR LEAGUE BASEBALL PROPERTIES, INC.; MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION; MLB PLAYERS, INC.; NATIONAL FOOTBALL LEAGUE; NFL PROPERTIES LLC; NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION; NFL PLAYERS, ASSOCIATION; NBA PROPERTIES, INC.; NATIONAL BASKETBALL ASSOCIATION PLAYERS ASSOCIATION; AND ONETEAM PARTNERS LLC,<br><br>               Defendants. | Case No. 1:25-cv-02202-LTS-VF<br><br>Chief District Judge Laura Taylor Swain |

**PLAINTIFFS' OPPOSITION TO MOTIONS TO COMPEL ARBITRATION AND TO STAY CLAIMS FILED BY DEFENDANTS FANATICS, INC., FANATICS, LLC, FANATICS COLLECTIBLES INTERMEDIATE HOLDCO, INC., FANATICS SPV, LLC, MAJOR LEAGUE BASEBALL, MAJOR LEAGE BASEBALL PROPERTIES, INC. MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION, <u>AND MLB PLAYERS, INC.</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   BACKGROUND .......................................................................................................3

      A.    Identification of Claims at Issue. ..................................................................3

      B.    Relevant Purchases by Plaintiffs Bubnick, Davidov, and Madar. ..............5

      C.    Procedural History. .......................................................................................6

III.  LEGAL STANDARD................................................................................................6

IV.   ARGUMENT.............................................................................................................7

      A.    Defendants do not move to compel arbitration with respect to purchases from
            Topps.com.....................................................................................................7

      B.    Plaintiffs' claims are not subject to the Fanatics.com TOU arbitration clause........9

            1.    Topps.com purchases are an independent antitrust claim............................9

            2.    Even if any Plaintiff entered an ongoing contractual relationship with
                  Fanatics, the Topps.com ST&C would govern. ......................................10

            3.    Fanatics' motion also fails as to claims, if any, governed by the
                  Fanatics.com TOU. ................................................................................12

      C.    None of Plaintiffs' claims against non-Fanatics defendants are subject to
            arbitration. .................................................................................................18

      D.    Even if some or all claims are arbitrable, Moving Defendants provide no grounds
            for staying the remaining claims..................................................................22

V.    CONCLUSION.........................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albunio v. City of New York*, 23 N.Y.3d 65 (2014). ................................................... 11

*Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522 (2d Cir. 2011). .................. 10

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003). ................................................. 7

*Bindman v. MH Sub I, LLC*, No. 19-cv-02614-SI, 2019 WL 6877194
    (N.D. Cal. Dec. 17, 2019). ............................................................. 11

*Cabrera v. CVS Rx Servs., Inc.*, No. 17-5803, 2018 WL 1367323
    (N.D. Cal. Mar. 16, 2018). ............................................................ 23

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002). ....................................... 7

*CollegeStreet Import & Export (Tianjin) Co. v. TL x HF, LLC*, 777 F. Supp. 3d 238
    (S.D.N.Y. 2025). ...................................................................... 23

*Colony Cap. Inc. v. Flaherty*, No. 21-CV-4645-LTS, 2022 WL 2440993
    (S.D.N.Y. July 5, 2022). ........................................................... 19, 20

*Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205 (2d Cir. 2005). .................................... 16

*Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2d Cir. 1993). ......................... 15

*Davitashvili v. Grubhub Inc.*, 131 F.4th 109 (2d Cir. 2025). ................................... passim

*Davitashvili v. Grubhub Inc.*, No. 20-cv-3000 (LAK), 2023 WL 2537777
    (S.D.N.Y. Mar. 16, 2023). ............................................................ 14

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308 (2d Cir. 2021). ...................... 14, 15, 16

*Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245 (2d Cir. 2019). ................................. 14

*Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122 (2d Cir. 2025). ..................................... 8

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995). ....................................... 14

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d. Cir. 1987). .......................... 22

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). ...................................... 6

*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435
    (S.D.N.Y. 2013). ...................................................................... 11

*Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000). ......................... 19

*Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-cv-3028-T-35JSS,
    2016 WL 7447555 (M.D. Fla. Aug. 26, 2016). ........................................... 8

*In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527 (S.D.N.Y. 2021). .............. 7, 9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996). ....................... 18

*Lalewicz v. WarnerMedia Direct, LLC*, No. 24-CV-6173 (JMF), 2025 WL 1819730
    (S.D.N.Y. July 5, 2025). ............................................................. 11

*Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023). ............................................................................................ 11

*Maldonado v. Nat'l Football League*, No. 1:22-CV-02289 (ALC), 2023 WL 4580417 (S.D.N.Y. July 18, 2023). .................................................................................... 16, 21

*Markson v. CRST Int'l, Inc.*, No. 17-1261, 2022 WL 790960 (C.D. Cal. Feb. 24, 2022). .......... 18

*McGhee v. N. Am. Bancard, LLC*, 755 F. App'x 718 (9th Cir. 2019). ....................................... 10

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). ........................................................................ 8

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010 (2d Cir. 2014). ...................... 15, 16

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016). ....................................................... 7

*Pabon v. HRB Digit. LLC*, No. 23-CV-5363(EK)(ARL), 2025 WL 2254008 (E.D.N.Y. Aug. 7, 2025). .............................................................................................. 17

*Palladino v. JP Morgan Chase & Co.*, No. 23-1215, 2024 WL 3594569 (E.D.N.Y. July 31, 2024). .................................................................................. 19, 20, 21

*Panini Am., Inc. v. Fanatics, Inc.*, No. 1:23-CV-09714, 2025 WL 753954 (S.D.N.Y. Mar. 10, 2025). ............................................................................................ 1, 6

*Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62 (S.D.N.Y. 2023). .............................................. 20

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012). ......................................................... 6

*SDJ Invs., LLC v. Collector's Coffee Inc.*, No. 21-2070, 2022 WL 17097231 (2d Cir. Nov. 22, 2022). ............................................................................................... 22

*Sierra Rutile Ltd. v. Katz*, 937 F.2d 743 (2d Cir. 1991) .............................................................. 22

*Staley v. Gilead Scis., Inc.*, No. 19-cv-02573-EMC, 2021 WL 4972628 (N.D. Cal. Mar. 12, 2021). .......................................................................................... 20

*Staley v. Hotel 57 Servs., LLC*, No. 23-770, 2024 WL 1090816 (2d Cir. Mar. 13, 2024). .......... 16

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*, 120 F.4th 59 (2d Cir. 2024). ............................................................................................................................ 6

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981). ............................................. 18

*Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) ..................................................... 13

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989). ................. 6

*Walker v. Metro N. Commuter R.R.*, No. 23-9883, 2024 WL 4266261 (S.D.N.Y. Sept. 23, 2024). ............................................................................................ 22

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. CV-2037-N, 2006 WL 2473665 (Del. Ch. Aug. 22, 2006) ....................................................................................... 19, 20

**Statutes**

9 U.S.C. § 2 ................................................................................................................................. 13

**Articles**

David Horton, *Accidental Arbitration*, 102 Wash. Univ. L. Rev. 1381, 1390, 1391 n.63 (2025).
......................................................................................................................................... 13

## I.    INTRODUCTION

In an effort to avoid liability for their monopolization of the market for newly issued, fully licensed MLB, NBA, and NFL trading cards (Trading Cards), certain Defendants move to compel arbitration for antitrust claims unrelated to any contract between any Plaintiff and any Defendant. No aspect of Plaintiffs' claims asserts a right derived from contract, and adjudication of Plaintiffs' claims requires no recourse to the terms of a contract. But because this Court has already rejected a motion to dismiss an action with the same allegations in a related antitrust case filed by Panini America, Inc. against its competitor Fanatics,[1] Defendants try another tack for avoiding liability. *See Panini Am., Inc. v. Fanatics, Inc.*, No. 1:23-CV-09714, 2025 WL 753954, at *16 (S.D.N.Y. Mar. 10, 2025) (denying in part Fanatics' motion to dismiss and allowing four out of five antitrust claims—including all the claims that parallel Plaintiffs' allegations here—to proceed). Plaintiffs' claims, however, are not subject to the arbitration clause Defendants identify.

When it sought dismissal of Panini's claims, Fanatics represented to this Court that federal antitrust law would "allow consumers to bring an antitrust action themselves." *Id.* at *7. Now that consumers (Plaintiffs here) have done so, however, Fanatics and co-conspirators Major League Baseball and Major League Baseball Properties, Inc. (collectively MLB); and Major League Baseball Players Association and MLB Players, Inc. (collectively MLBPA, and, together with Fanatics and MLB, Moving Defendants) seek to obstruct their legal recourse. Specifically, Moving Defendants argue that Plaintiffs' claims are subject to arbitration under the Fanatics.com Terms of Use (Fanatics.com TOU). They do not make this argument with respect to the

---

[1] Defendant Fanatics consists of Fanatics, Inc., Fanatics, LLC, Fanatics Collectibles Intermediate Holdco, Inc., and Fanatics SPV, LLC.

Topps.com Service Terms and Conditions (Topps.com ST&C). Although this motion is disguised as a dispute over venue, its true intention is to shield Defendants from legal consequences and preserve Fanatics' monopoly. In a consumer market like this, it is uneconomic for any individual to challenge the monopoly on her own, and entirely irrational to outlay hundreds of dollars in arbitration fees for a small-dollar individual recovery.

Moving Defendants do *not* move to compel arbitration of claims based on Plaintiffs' direct purchases from Topps.com, one of Fanatics' websites; those claims survive regardless. They also fail to establish the arbitrability of claims premised on Fanatics.com purchases. The Fanatics.com TOU's adoption of American Arbitration Association (AAA) procedural rules does not delegate the question of arbitrability to an arbitrator where, as here, the scope of the arbitration agreement is ambiguous. The arbitrability inquiry accordingly belongs in this Court. And as the Second Circuit's recent *Grubhub* decision makes clear, because Plaintiffs' antitrust claims are not caused by the agreement, they are not arbitrable. *See Davitashvili v. Grubhub Inc.*, 131 F.4th 109 (2d Cir. 2025).

Even if the Court were to compel arbitration of claims against Fanatics, it should deny MLB and MLBPA's motions for arbitration of claims against them. These Defendants are not signatories to any arbitration agreement with Plaintiffs, and they ask the Court to apply an incorrect test for equitable estoppel under Delaware law. The correct test dictates that non-signatories can only compel arbitration of claims whose substance is "intertwined" with the agreement containing the arbitration clause.

Finally, even if the Court were to grant arbitration of all claims against all Moving Defendants, it should deny the motion to stay resolution of all other claims. The scope of claims subject to Moving Defendants' motions makes up a minority of this action—whether counted by

Defendants or by claims. As rational economic actors, Plaintiffs disclaim any intention to pursue negative-value arbitration for their individual claims, obviating any concern about inconsistent rulings. The Court retains discretion to deny the motion to stay, and denial is appropriate in light of the significant prejudice Plaintiffs continue to suffer on account of the ongoing monopoly.

For these reasons and those elaborated below, the Court should deny Moving Defendants' motions in their entirety.

## II.     BACKGROUND

### A.     Identification of Claims at Issue.

In response to Plaintiffs' First Amended Class Action Complaint, ECF No. 103 (FAC), each of the eight corporate families of Defendants filed a separate Rule 12(b) memorandum. ECF Nos. 129, 131, 133, 135, 140, 144, 150, 152. Fanatics also filed an additional memorandum in support of its motion to compel arbitration. ECF No. 141 (Fanatics Br.). Two of the Rule 12(b) memoranda, filed by MLB and MLBPA, included briefing in favor of compelling arbitration, partially relying on Fanatics' arguments and partially articulating independent arguments. *See* ECF No. 150 at 6-8 (MLB Br.); ECF No. 152 at 23-25 (MLBPA Br., expressing arbitration arguments "in the alternative" to Rule 12(b)(6) arguments). The result is nine memoranda, totaling 177 pages, which lay out a web of overlapping arguments and partial incorporations by reference. For the convenience of the Court, Plaintiffs identify which claims are subject to Moving Defendants' arbitration arguments and which are not.

Fanatics moves to compel arbitration of the claims asserted against it by Plaintiffs Bubnick, Davidov, and Madar. It does not seek arbitration of any claims asserted by Plaintiffs Scaturo and Mardakhaev. *See* Fanatics Br. at 1, 4-9. MLB and MLBPA each moves to compel arbitration of claims asserted against it by Bubnick, Davidov, and Madar on the basis of equitable estoppel. *See* MLB Br. at 6-8; MLBPA Br. at 23-25. Remaining Defendants NFLPA,

NBA, NBPA, and OneTeam do not seek arbitration. They make no reference to the issue, despite carefully indicating which sections of other Defendants' briefs they join. *See, e.g.*, ECF No. 140 at 10 n., 20 n.8, 22 n.9 (NFLPA); ECF No. 131 at 7 n.1, 12 n.3 (NBA); ECF No. 135 at 2 n.2, 6 n.5, 7 n.6 (OneTeam).[2]

Figures 1 and 2 below outline which claims asserted in this action are subject to motions to compel arbitration and which are not:

**FIGURE 1**

| Claims by Bubnick, Davidov, Madar | Subject of Fanatics Motion | Subject of Other Defendants' Motion |
|---|---|---|
| Count 1: Fanatics and MLB | Yes | Yes |
| Count 2: Fanatics, MLBPA, and OneTeam | Yes | Yes |
| Count 3: Fanatics and NFL | Yes | No |
| Count 4: Fanatics, NFLPA, and OneTeam | Yes | No |
| Count 5: Fanatics and NBA | Yes | No |
| Count 6: Fanatics and NBPA | Yes | No |
| Count 7: Fanatics | Yes | No |
| Count 8: Fanatics | Yes | No |

**FIGURE 2**

| Claims by Scaturo and Mardakhaev | Subject of Fanatics Motion | Subject of Other Defendants' Motion |
|---|---|---|
| Count 1: Fanatics and MLB | No | No |
| Count 2: Fanatics, MLBPA, and OneTeam | No | No |
| Count 3: Fanatics and NFL | No | No |
| Count 4: Fanatics, NFLPA, and OneTeam | No | No |
| Count 5: Fanatics and NBA | No | No |
| Count 6: Fanatics and NBPA | No | No |

---

[2] NFL does not move for arbitration of any currently pending claims but only suggests that claims based on future purchases "from Fanatics" will be subject to arbitration. NFL, too, does *not* make this argument as to purchases from Topps.com. *See* ECF No. 129 at 19-20.

| Claims by Scaturo and Mardakhaev | Subject of Fanatics Motion | Subject of Other Defendants' Motion |
|---|---|---|
| Count 7: Fanatics | No | No |
| Count 8: Fanatics | No | No |

In addition to their arguments in support of arbitration of the claims identified above, Fanatics, MLBPA, and MLB move to stay all *remaining* claims in this action pending arbitration. *See* Fanatics Br. at 16-17; MLB Br. at 6 n.3; MLBPA Br. at 7 n.5.

**B.     Relevant Purchases by Plaintiffs Bubnick, Davidov, and Madar.**

Plaintiff Bubnick purchased (i) MLB Trading Cards from Topps.com on June 14, 2024, July 22, 2024, September 15, 2024, October 8, 2024, and October 19, 2024; and (ii) MLB Trading Cards from Fanatics.com on May 28, 2024. Decl. of Charles Kopel in Opp. to Defs.' Mots. to Dismiss and to Compel Arbitration, Ex. 5 ¶¶ 2-7 (Ex. 5). Plaintiff Davidov purchased MLB Trading Cards from Topps.com on April 2, 2025. *See* Ex. 2 ¶ 2. Plaintiff Madar purchased MLB Trading Cards from Fanatics.com on April 2, 2025, and other MLB Trading Cards from Topps.com on September 18, 2025. *See* Ex. 4 ¶¶ 2-3. Moving Defendants do not seek to compel arbitration of claims founded on Topps.com purchases, and all Plaintiffs purchased on Topps.com. *See* Figure 3.

**FIGURE 3 – Purchases by Plaintiffs on Topps.com**

| Plaintiff | Topps.com Purchases? (NOT subject to the motions to compel arbitration) |
|---|---|
| **Bubnick** | YES |
| **Davidov** | YES |
| **Madar** | YES |

C.    **Procedural History.**

Panini filed antitrust claims against Fanatics concerning monopolization of the market for MLB, NFL, and NBA Trading Cards on August 3, 2023. *See Panini Am., Inc. v. Fanatics, Inc. et al.*, No. 1:23-CV-09714, ECF No. 1 (S.D.N.Y.) (*Panini*). Panini's action was transferred to this District on October 31, 2023. *Id.* at ECF No. 75. On March 10, 2025, this Court denied Fanatics' motion to dismiss Panini's antitrust claims, which are based on the same conduct underlying Plaintiffs' claims here. *See Panini*, at *5-11.[3] Discovery is ongoing in Panini's action.

This action, on behalf of direct purchasers, was filed on March 17, 2025. ECF No. 1. The Court accepted this action as related to Panini's action on March 20, 2025. Plaintiffs' FAC was filed on May 8, 2025. ECF No. 103. Defendants moved to dismiss the claims, and certain Defendants moved to arbitrate and stay claims (as outlined above) on July 28, 2025. ECF Nos. 128-53.[4]

## III.    LEGAL STANDARD

The Federal Arbitration Act (FAA) "does not require parties to arbitrate when they have not agreed to do so." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)). In other words, the FAA does not grant arbitration agreements greater power than other contracts.

---

[3] The only antitrust claim not sustained by the *Panini* decision, which concerned Fanatics' acquisition of Topps, failed on account of Panini's position as a competitor, rather than a consumer. *See Panini*, at *5 ("[A]s one of the remaining two competitors in the field, Panini *benefitted* from the alleged market concentration as a prevailing duopolist with the opportunity and incentive to increase prices.") (internal quotation marks omitted). Plaintiffs here, who are consumers and not competitors, do not assert a claim solely based on Panini's acquisition of Topps. The Court also dismissed portions of Panini's state law claims, all of which concerned Panini's contractual relationships and business reputation. *See id.* at *11-15.

[4] Subsequent to the filing of this action, multiple actions were filed on behalf of indirect purchasers of fully licensed, newly issued MLB, NFL, and NBA Trading Cards. These actions were consolidated by this Court on August 14, 2025. *See Jones v. Fanatics, Inc. et al.*, No. 1:25-CV-05776, ECF No. 110 (S.D.N.Y.).

Rather, its purpose was simply "'to place arbitration agreements upon the same footing as other contracts.'" *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*, 120 F.4th 59, 86 (2d. Cir. 2024) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

When evaluating a motion to compel arbitration, courts apply a "'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). That standard requires courts to "consider all relevant, admissible evidence submitted by the parties," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (internal quotations & citation omitted), and "draw all reasonable inferences in favor of the non-moving party," *Nicosia*, 834 F.3d at 229.

## IV.    ARGUMENT

### A.    Defendants do not move to compel arbitration with respect to purchases from Topps.com.

Plaintiffs Bubnick, Davidov, and Madar each purchased Trading Cards on Topps.com during the Class Period. *See supra* at § II.B; FAC ¶ 56 (defining the "Class Period" as "the period beginning January 1, 2022 until such time as the anticompetitive conduct alleged herein ceases"). Moving Defendants do not move to compel arbitration of claims relating to these purchases from Topps.com. "Paying an overcharge caused by the alleged anticompetitive conduct on a single purchase suffices to show—as a legal and factual matter—impact or fact of damage." *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 557 (S.D.N.Y. 2021) (internal quotations & citation omitted). Each of Plaintiffs' purchases on Topps.com accordingly provides a sufficient basis for a claim against Fanatics.

Topps.com purchases are not governed by the Fanatics.com TOU (ECF No. 142-6), the agreement upon which Moving Defendants rely. Indeed, on the dates of these purchases,

Topps.com had an entirely different set of Service Terms & Conditions (Topps ST&C), which "contain the binding terms and conditions between you and The Topps Company, Inc. ("Topps") applicable your access to and use of this website." Ex. 6 (Apr. 20, 2020 Topps.com ST&C); Ex. 7 (Oct. 21, 2024 Topps.com ST&C); Ex. 8 (Sept. 5, 2025 Topps.com Terms of Use ("TOU")). Consumers using Topps.com therefore had "no reason to expect that they are being bound to any additional terms outside those displayed." *Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 WL 7447555, at *6 (M.D. Fla. Aug. 26, 2016).

Fanatics is aware of the Topps.com purchases made by Plaintiffs. *See supra* at § II.B (listing purchases). Fanatics confirms in its filings that Topps.com is one of its platforms, that Topps.com purchases constitute direct purchases from Fanatics, and that it can search records of these purchases. *See* ECF No. 147 ¶¶ 3-4 (Decl. of Vadim Ivanis describing a search of purchase records on "the Fanatics-owned website Topps.com"); ECF No. 144 at 19-20 (Fanatics' memorandum of law in support of its motion to dismiss relying on the Ivanis Declaration to identify direct purchases). Its motion to compel arbitration, however, says nothing about these purchases or the Topps.com ST&C. Claims founded on these purchases accordingly remain in this Court.[5]

Even if defendants had moved to compel arbitration based on Topps.com purchases, that motion would fail. The Topps.com ST&C allows consumers to "opt out of the agreement to arbitrate" if they "do not wish to agree to the provisions of this Section 18 agreement requiring

---

[5] By filing a motion to compel arbitration without mention of the Topps.com ST&C, Fanatics waives any right it may have had to seek enforcement of the Topps.com ST&C arbitration clause. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it."); *Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 130 (2d Cir. 2025) (explaining that. after *Morgan*, the waiver test for arbitration clauses no longer focuses on prejudice, and that "courts may evaluate waiver by focusing on the following question: Did the moving party knowingly relinquish the right to arbitrate by acting inconsistently with that right?").

arbitration and class action waiver" by sending a letter within 30 days including the consumer's name, address, and an "unequivocal statement" of intention to opt out of the arbitration clause. Oct. 21, 2024 Topps.com ST&C ¶ 18.11.2; Sept. 5, 2025 Topps.com TOU ¶ 18.11.2.[6] Davidov sent an opt-out letter notifying Fanatics of his "unequivocal decision to opt out of the arbitration agreement" on April 24, 2025, Ex. 2 at Ex. A (Davidov Opt-Out Letter), and Madar sent an opt-out letter on October 3, 2025. Ex. 4 at Ex. A (Madar Opt-Out Letter).[7]

**B.    Plaintiffs' claims are not subject to the Fanatics.com TOU arbitration clause.**

Plaintiffs' purchases on Topps.com, which Moving Defendants do not mention, defeat any application of the Fanatics.com TOU arbitration clause in either of two ways: (1) they provide each of them with an independent antitrust cause of action not controlled by the Fanatics.com TOU arbitration clause; (2) alternatively, even if the Court were to hold that any Plaintiff's earlier assent to the Fanatics.com TOU established an ongoing contractual relationship between him and Fanatics that carried forward to later purchases from Fanatics platforms, the merger clause of the Topps.com ST&C dictates the terms of that contractual relationship.

**1.    Topps.com purchases are an independent antitrust claim.**

As discussed above, each purchase on Topps.com gives rise to a separate, independent antitrust claim. *Supra* at § IV.A; *Namenda*, 338 F.R.D. at 557.

Plaintiffs' purchases from Topps.com are governed by the Topps.com ST&C, not the Fanatics.com TOU. There is no reasonable argument that the Fanatics.com TOU reaches across different Fanatics-owned websites. Fanatics implicitly concedes this, arguing that purchases on

---

[6] Although the September 5, 2025 version is styled as "TOU," this memorandum uses the term "Topps.com ST&C" when referring to the versions collectively.

[7] Plaintiffs Scaturo and Mardakhaev, who are not subject to the motion to compel arbitration, have both validly opted out of arbitration following their own Topps.com purchases. *See* Ex 1 at Ex. A; Ex. 3 at Ex. A. Plaintiffs can similarly opt out of arbitration as to any future Topps.com purchases. Any previous agreements are voided by operation of the merger clause discussed below. *See infra* at§ IV.B.2.

certain other Fanatics-owned websites are arbitrable because "materially identical arbitration provisions are and have been part of the TOU on other Fanatics-owned or operated websites," but *not* including Topps.com on that list. Fanatics Br. at 3 (providing examples from other Fanatics-owned websites, but *not* from Topps.com). Fanatics could not include Topps.com in its argument because that site utilizes entirely different language and, unlike the Fanatics.com TOU, allows users to opt out of arbitration. *See* Oct. 21, 2024 Topps.com ST&C ¶ 18.11.

### 2. Even if any Plaintiff entered an ongoing contractual relationship with Fanatics, the Topps.com ST&C would govern.

On reply, Moving Defendants may argue that the Fanatics.com TOU set ongoing terms for all subsequent interactions with Fanatics platforms, including the Topps.com purchases. However, even if a Plaintiff's earlier use of Fanatics.com (or other Fanatics platforms using the same TOU) established a continuing relationship that embraces future transactions, those claims still are not subject to arbitration.

Davidov purchased MLB Trading Cards on Topps.com on April 2, 2025, and Madar purchased MLB Trading Cards on Topps.com on September 18, 2025. *See supra* at § II.B. The Oct. 21, 2024 Topps.com ST&C and September 5, 2025 Topps.com TOU, which applied to these transactions, each includes a merger clause identifying it as "the final, complete, and exclusive agreement of the parties with respect to the subject matter hereof [that] supersedes and merges all prior discussions between the parties with respect to such subject matter." Oct. 21, 2024 Topps.com ST&C ¶ 27; Sept. 5, 2025 Topps.com TOU ¶ 28. Fanatics thereby extinguished any preexisting contractual terms between itself and these Plaintiffs relating to the "subject matter hereof." *See Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 525-26 (2d Cir. 2011) (holding that a merger clause in a subsequent agreement between two parties "displaces" the earlier agreement's arbitration clause); *McGhee v. N. Am. Bancard, LLC*, 755 F. App'x 718,

719 (9th Cir. 2019) (holding that the presence of merger clause providing that website Terms and Conditions comprise the "entire agreement" demonstrates that website user did not assent to an arbitration clause included in a separate "User Agreement").

Here, the "subject matter" of both the Topps.com ST&C and the Fanatics.com TOU covers purchases of Trading Cards from Fanatics. Fanatics' adoption of the former as to a consumer extinguishes any obligations owed to it by that consumer under the latter. *See Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 443 (S.D.N.Y. 2013) (characterizing the phrase "the entire agreement between the parties relating to the subject matter hereof" as a "broad merger clause[]"). Further, in line with black letter contract law principles, any ambiguity regarding whether the Topps.com ST&C concerns the same "subject matter" as the Fanatics.com TOU must be resolved against Fanatics, the drafter of the terms. *See Lalewicz v. WarnerMedia Direct, LLC*, No. 24-CV-6173 (JMF), 2025 WL 1819730, at *5 (S.D.N.Y. July 5, 2025) ("In general, ambiguous or 'equivocal contracts will be construed against the drafters.'") (quoting *Albunio v. City of New York*, 23 N.Y.3d 65, 71 (2014)).

That the Topps.com ST&C supersedes obligations under the Fanatics.com TOU is supported by the Fanatics.com TOU's own "language indicating [its] lack of permanence." *Bindman v. MH Sub I, LLC*, No. 19-cv-02614-SI, 2019 WL 6877194, at *4 (N.D. Cal. Dec. 17, 2019) (applying a merger clause to overcome an earlier arbitration agreement). Specifically, the Fanatics.com TOU acknowledges that "[c]ertain provisions of the Terms of Use *may be superseded* by expressly designated legal notices, rules or other terms located on particular pages of the Properties." Fanatics.com TOU ¶ 2 (emphasis added).

3.      **Fanatics' motion also fails as to claims, if any, governed by the Fanatics.com TOU.**

A court may compel arbitration only if it is "satisfied that neither the formation of the parties' arbitration agreement *nor* . . . its enforceability or applicability to the dispute is in issue." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113 (2d Cir. 2023) (citation omitted). Here, even if the Court is satisfied that Plaintiffs Bubnick and Madar consented to the terms of the Fanatics.com TOU when they purchased cards on Fanatics.com (Fanatics Br. at 4-6, 8-9), that Plaintiff Davidov consented to these terms when he created an account on MLBShop.com (Fanatics Br. at 7-8), and that this agreement was somehow not extinguished by the Topps.com ST&C merger clause, the Fanatics.com TOU arbitration clause would not apply to antitrust claims founded on those purchases.

a.      **The Second Circuit's recent *Grubhub* decision frames the arbitrability inquiry.**

Earlier this year, the Second Circuit explained the limited application of online consumer arbitration agreements to antitrust claims. In *Grubhub*, plaintiffs alleged that food delivery platforms Uber, Grubhub, and Postmates inflated restaurant meal prices by conditioning restaurants' use of their platforms on agreement to a no-price competition clause (NPCC). The NPCC prevented restaurants from disincentivizing customers from using defendants' platforms by prohibiting restaurants from selling food at lower prices on other platforms or over the phone via traditional takeout. *Grubhub*, 131 F.4th at 113. In response, defendant Grubhub moved under the FAA to compel arbitration of plaintiffs' claims on the basis of its digital checkout arbitration clause, which purported to govern "all claims, disputes, or disagreements that may arise out of the interpretation or performance of this Agreement or payments by or to Grubhub, *or that in any way relate to* your use of the Platform." *Id.* at 119 (emphasis added).

The Second Circuit explained, in reliance on language in the Supreme Court's 2022 *Viking River Cruises* decision, that the FAA only reaches disputes *caused by* the agreement. *Grubhub*, 131 F.4th at 119 ("The FAA's scope is limited to 'agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship'—that is, controversies that were 'cause[d]' by the relationship.") (quoting *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 652 n.4 (2022)). It also quoted the text of the FAA, which refers to controversies "arising out of" arbitration contracts.  *Grubhub*, 131 F.4th at 119 n.49 (quoting 9 U.S.C. § 2).

 On the basis of this statutory construction, the Second Circuit held that the *Grubhub* plaintiffs did not have to arbitrate their antitrust claims against Grubhub because those claims "have nothing to do with Plaintiffs' individualized use of Grubhub's website or mobile application." *Grubhub*, 131 F.4th at 119. No causal link existed between the website agreement and the claims, as "Plaintiffs who never used Grubhub are just as much class members as those who have." *Id.* at 120.

Judge Pérez confirmed in a separate concurrence that:

> The Court appropriately rejects what amounts to an attempt by Grubhub to funnel every conceivable claim against it into arbitration, no matter its content…Online merchants should remember that there are real limits on their ability to force consumers to arbitrate. Those limits protect, among others, consumers…who could not reasonably conceive that an arbitration clause was as broad as the merchant later claims.

*Grubhub*, 131 F.4th at 124-25 (Pérez, J., concurring). Subsequently, a law review article by Professor David Horton noted that *Grubhub* provides "the most full-throated endorsement to date" of the "contractual nexus theory," according to which the FAA "applies solely to agreements to arbitrate causes of action that 'aris[e] out of' the container contract." David Horton, *Accidental Arbitration*, 102 Wash. Univ. L. Rev. 1381, 1390, 1391 n.63 (2025).

Moving Defendants' memoranda do not address *Grubhub*, and each one even highlights the Fanatics.com TOU's language prescribing arbitration for disputes "arising out of or

connected to" consumers' use of the website. Fanatics Br. at 1, 14, 16; MLB Br. at 7; MLBPA Br. at 23. The standard they urge is inconsistent with the law as explained in *Grubhub*.

> ### b.   The Fanatics.com TOU does not delegate arbitrability to the arbitrator.

The threshold question of an arbitration agreement's applicability to the dispute, known as arbitrability, "presumptively should be resolved by the court and not referred to the arbitrator." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019). For a court to hold otherwise, the contract must include "clear and unmistakable" evidence of delegation to the arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The Fanatics.com TOU, the agreement at issue in Fanatics' motion, never refers to arbitrability or uses the word "delegate."[8] Fanatics nonetheless contends that it has delegated the question of arbitrability to the arbitrator, relying solely on the clause's incorporation of AAA procedural rules. *See* Fanatics Br. at 15 (quoting the Fanatics.com TOU ¶ 22 provision that any arbitration is to be conducted "under the rules of the [AAA] including the Supplementary Procedures for Consumer-Related Disputes").

Fanatics misrepresents the import of this language. The Second Circuit has cautioned that incorporation of AAA rules "does not, *per se*, demonstrate clear and unmistakable evidence of the parties' intent to delegate threshold questions of arbitrability to the arbitrator where other aspects of the contract create ambiguity as to the parties' intent." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021). Therefore, when an "arbitration agreement is narrower, vague, or contains exclusionary language suggesting that the parties

---

[8] *Compare* Fanatics.com TOU, *with Davitashvili v. Grubhub Inc.*, No. 20-cv-3000 (LAK), 2023 WL 2537777, at *4 (S.D.N.Y. Mar. 16, 2023) (Uber's so-titled "Delegation Clause" later affirmed by Second Circuit, providing that "[o]nly an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority…*to resolve all threshold arbitrability issues*.").

consented to arbitrate only a limited subset of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice" to delegate arbitrability. *Id.* at 319. This step does not require the Court to pre-judge the ultimate arbitrability question before deciding whether the question belongs to the arbitrator. Rather, the Court peeks at the scope of the arbitration clause to determine whether the dispute "*arguably* does not fall within the scope of the arbitration agreement." *Id.* at 320 (emphasis added). At that point, the presence of ambiguity "delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014).

The agreement at issue in Fanatics' motion narrows the scope of its applicability, or at least introduces ambiguity, by representing that, pursuant to the arbitration clause, consumers only waive their rights "TO SUE OR GO TO COURT TO ASSERT OR DEFEND [THEIR] *RIGHTS UNDER THIS CONTRACT*." Fanatics.com TOU ¶ 22 (caps in original, emphasis added). On its face, this language not only limits the scope of the agreement's applicability, but entirely excludes Plaintiffs' claims from its reach. The term "rights under a contract" is legally synonymous with "contractual rights arising from that agreement." *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682 (2d Cir. 1993) (holding that a copyright licensing agreement's forum selection clause does not apply to a claim for copyright infringement). Plaintiffs do not assert any rights *under the contract*, *i.e.*, arising from the Fanatics.com TOU; instead, Plaintiffs assert claims only under federal antitrust law. *See* FAC ¶¶ 153-241. Indeed, the FAC does not refer to this or any other contract between Plaintiffs and Fanatics.[9]

---

[9] The distinction between antitrust claims and claims arising under the agreement is sharpened by the Fanatics.com TOU itself, which identifies rights available "under these Terms of Use" as a category separate from rights available "under applicable law." Fanatics.com TOU ¶ 14.

Because the Fanatics.com TOU narrows the reach of its arbitration clause in this way, or at least creates ambiguity, the incorporation of AAA procedural rules does not delegate the question of arbitrability to an arbitrator. *See Staley v. Hotel 57 Servs., LLC*, No. 23-770, 2024 WL 1090816, at *3 (2d Cir. Mar. 13, 2024) (holding that incorporation of AAA rules in an arbitration clause identifying certain "types of claims" does not delegate arbitrability to the arbitrator). In these circumstances, in the absence of "clear and unmistakable" evidence to the contrary, the Court should apply the "presumption in favor of having a court decide threshold questions of arbitrability." *Id.*

In urging a contrary holding, Fanatics relies heavily on the 2023 *Maldonado* decision, which, with little analysis, construed the same contractual language to constitute a delegation of arbitrability. *See Maldonado v. Nat'l Football League*, No. 1:22-CV-02289 (ALC), 2023 WL 4580417, at *5 (S.D.N.Y. July 18, 2023).[10] However, *Grubhub*, which guards the expectations of consumers "who could not reasonably conceive that an arbitration clause was as broad as the merchant later claims," 131 F.4th at 125, shows that *Maldonado* is not good law. Considering the ambiguity in the Fanatics.com TOU regarding the scope of its applicability, the incorporation of AAA procedural rules does not provide "clear and unmistakable" evidence in support of delegation, and the arbitrability determination belongs in this Court.

---

[10] The *Maldonado* decision relied on *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005), and on two summary orders following *Contec*, for the proposition that incorporation of AAA procedural rules constitutes sufficient evidence that the parties delegated the arbitrability inquiry. *Maldonado*, 2023 WL 4580417, at *2. However, the Second Circuit clarified in *DDK* that *Contec* reached that holding only because the arbitration clause at issue applied broadly and unambiguously to "any controversy arising with respect to this Agreement." *DDK*, 6 F.4th at 321 n.4 (quoting *Contec*, 398 F.3d at 208)). *See also NASDAQ OMX*, 770 F.3d at 1032 (same). As explained in *DDK*, *Contec* accordingly does not apply to arbitration clauses with a narrow or ambiguous scope of applicability. 6 F.4th at 318.

c.    **Plaintiffs' antitrust claims are not arbitrable.**

The Fanatics.com TOU's arbitration language does not support the arbitrability of Plaintiffs' antitrust claims. Although the agreement asserts that it covers disputes not only "arising out of" but also those "connected with" the parties' contractual relationship, as explained above, its scope is constrained by the FAA to cover only disputes *caused by* the agreement. *See Grubhub*, 131 F.4th at 119.

Like in *Grubhub*, the import of Plaintiffs' antitrust claims is *not* their individual use of the Fanatics (or any) website, but the actions undertaken by Fanatics and its co-conspirators that "foreclose competition entirely in the markets for MLB player trading cards, NBA player trading cards, and NFL player trading cards." FAC ¶ 151. Also, like in *Grubhub*, assent to the Fanatics.com TOU arbitration clause (or any website arbitration clause) is not a necessary condition for class membership.[11] Publicly available materials show that Fanatics operates brick and mortar stores where consumers can purchase Trading Cards directly. *See, e.g.*, Ex. 9 (June 20, 2023 press release describing the opening of a Fanatics store within a major league stadium, including a photograph of a Topps card desk); Ex. 10 ("National Sports Collectors Convention: Interactive Map," showing the participation of a "Fanatics and Topps" booth at the 2025 NSCC in Illinois). Customers at these stores purchase directly from Fanatics and are equally members of the class, despite never having assented to a digital arbitration agreement.

Further, Plaintiffs' allegations that Fanatics utilized its market power to force restrictive terms on secondary card retailers (FAC ¶¶ 132-36) – who likely do not purchase under the

---

[11] This fact distinguishes Plaintiffs' claims from, *e.g.*, claims concerning a website's digital surveillance of its users' browsing activity, or claims concerning a website's inaccessibility to users with disabilities, either of which, by their very nature and class definition, are entirely dependent on class members' use of the website. *See Pabon v. HRB Digit. LLC*, No. 23-CV-5363(EK)(ARL), 2025 WL 2254008 (E.D.N.Y. Aug. 7, 2025) (compelling arbitration of putative class claims concerning a website privacy violation).

Fanatics.com TOU and likely do not have arbitration clauses[12] – demonstrate that the market restraint at the heart of this action is unrelated to any Plaintiff's specific use of online Fanatics platforms. Rather, the conduct impacts card purchasers who participate through any platform, including online, brick-and-mortar, and retailer purchasers.[13]

## C.     None of Plaintiffs' claims against non-Fanatics defendants is subject to arbitration.

Plaintiffs suffered their injuries when they purchased Trading Cards directly from Fanatics entities, and all of Fanatics' co-conspirators in each conspiracy are jointly and severally liable for the antitrust violations. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 519 (S.D.N.Y. 1996) ("Liability for antitrust violations is joint and several. Each Class member may therefore recover his or her full loss from any defendant who can be shown to have participated in the alleged conspiracy.") (citing *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 635 (1981)). Because Plaintiffs did not enter any arbitration agreement with any of the League and Player Association Defendants or OneTeam Partners, LLC concerning their purchase of Trading Cards from Fanatics entities, these Defendants have no basis to compel Plaintiffs to arbitrate their claims against them. *See Markson v. CRST Int'l, Inc.*, No. 17-1261, 2022 WL 790960, at *14 (C.D. Cal. Feb. 24, 2022) ("[B]ecause plaintiffs who establish an antitrust conspiracy can recover from any conspiring defendant under joint and several liability, the arbitration agreements and class waivers do not foreclose class members' ability to recover from

---

[12] The retailers themselves are direct purchasers, included in this class; the purchasers from the retailers are indirect purchasers.

[13] Even if they had not waived this argument, and even if Plaintiffs had not validly opted out, Fanatics would still have no greater success moving to compel arbitration of claims under the Topps.com ST&C arbitration clause. In the same way outlined here with respect to the Fanatics.com TOU, *Grubhub* establishes that Plaintiffs' claims are in no way caused by the terms of the Topps.com ST&C.

Defendants with which they did not sign agreements.") (citing *NASDAQ Mkt.-Makers*, 169

F.R.D. at 508).[14]

      MLB and MLBPA nonetheless seek arbitration of claims asserted against them on the

basis of the doctrine of equitable estoppel. Their argument fails because Plaintiffs' "success on

the merits [does] not depend on any provision of [the] arbitration agreement." *Colony Cap. Inc.*

*v. Flaherty*, No. 21-CV-4645-LTS, 2022 WL 2440993, at *6 (S.D.N.Y. July 5, 2022) (Taylor

Swain, J.).

      Equitable estoppel is a matter of state contract law. *See Palladino v. JP Morgan Chase &*

*Co.*, No. 23-1215, 2024 WL 3594569, at *12 (E.D.N.Y. July 31, 2024). The Fanatics.com TOU

is governed by Delaware law. Fanatics.com TOU ¶ 21. The Delaware Chancery Court explains

that equitable estoppel may apply "when the signatory to the contract containing an arbitration

clause raises allegations of substantially interdependent and concerted misconduct by both the

nonsignatory and one or more of the signatories to the contract." *Wilcox & Fetzer, Ltd. v. Corbett*

*& Wilcox*, No. CV-2037-N, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006) (citing *Grigson v.*

*Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)).

      In adopting this language, *Wilcox* makes clear that equitable estoppel in cases involving

alleged "interdependent and concerted misconduct" requires that the non-signatory seeking

arbitration demonstrate a relationship between the alleged "concerted misconduct" and the

agreement in which the arbitration clause appears. *See Wilcox*, 2006 WL 2473665, at *5 ("Any

analysis of whether Wilcox & Fetzer has a common law right [of action] also must address

whether it gave that right away in the Agreement. Moreover, Wilcox and Wilcox & Fetzer's

---

[14] By declining to seek arbitration alongside their co-Defendants, NFL, NFLPA, NBA, NBPA, and OneTeam waive
the right to seek arbitration of claims against them. *See supra* at 8 n.5 (outlining the operative standard for waiver of
the right to compel arbitration).

rights are *intertwined*. Wilcox's rights may be adversely affected if the Court interprets Wilcox & Fetzer's rights under the Agreement.") (emphasis added); *id.* ("The language of the Amended Complaint further illustrates the *close interconnection* of Wilcox & Fetzer's claims and the rights granted by the Agreement to Wilcox and Wilcox & Fetzer.") (emphasis added).

Accordingly, federal courts' applications of Delaware law recognize that equitable estoppel occurs on the basis of "interdependent and concerted misconduct" only when the alleged misconduct is itself related to the arbitration agreement. For instance, in *Colony Capital*, this Court explained that, when a plaintiff's "success on the merits [does] not depend on any provision of [the] arbitration agreement," there is no basis for equitable estoppel. 2022 WL 2440993, at *6. Rather, for a claim to be sufficiently "intertwined" with an arbitration agreement, the claim must "rely on either the existence of [the] arbitration agreement or the interpretation of any provision thereof." *Id.* at *5 (collecting cases).[15]

Similarly, in *Palladino*, a class of Visa and Mastercard holders alleged that Visa, Mastercard, and their respective member banks conspired to fix the prices of interchange fees. 2024 WL 3594569, at *2-3. Non-signatory defendants argued that they could enforce their signatory co-conspirators' arbitration agreements with consumers on equitable estoppel grounds. *Id.* at *12. The court denied their motion and explained that California law does not support equitable estoppel because "the cardholder agreements containing the arbitration provisions are not a part of the core conduct comprising the conspiracy," *Id.*, at *13-14, and that Delaware law

---

[15] In *Colony Capital*, this Court noted that Delaware law should apply, but referred to Second Circuit precedents because "[n]either party suggests any substantive difference on these points" between the two standards. 2022 WL 2440993, at *4 n.4. In briefing here, MLB similarly does not mention Delaware law, but instead applies Second Circuit precedents, asserting that "[e]quitable estoppel applies when "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed…" MLB Br. at 7 (quoting *Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 76 (S.D.N.Y. 2023)). *See also* MLB Br. at 7-8 (collecting additional cases).

would be similar, *Id.*, at *17 (citing *Wilcox*, 2006 WL 2473665, at *5). *See also Staley v. Gilead Scis., Inc.*, No. 19-cv-02573-EMC, 2021 WL 4972628, at *7 (N.D. Cal. Mar. 12, 2021) (holding that, under Delaware law, "mere allegations of collusive behavior between signatories and nonsignatories to a contract are not enough to compel arbitration between parties who have not agreed to arbitrate: those allegations of collusive behavior must also establish that the plaintiff's claims against the nonsignatory are 'intimately founded in and intertwined with the obligations imposed by the [contract containing the arbitration clause].'"

In contrast to the thorough analysis in *Colony Capital*, *Palladino*, and *Staley*, *Maldonado* dedicates just half a paragraph to the Delaware equitable estoppel test, quoting the language of the *Wilcox* test and neglecting to consider how courts read and apply that test under Delaware law. *See* 2023 WL 4580417, at *4.[16] Without any analysis of the Delaware requirement that the claims be "intertwined" with the agreement containing an arbitration clause, *Maldonado* held that mere allegations of "coordinated behavior" between signatory and nonsignatory Defendants sufficed to justify equitable estoppel. *Id.* That is an incorrect standard.

This Court should follow the better-reasoned decisions and reject Defendants' argument for equitable estoppel under Delaware law where the non-signatories fail to demonstrate an "intertwined" relationship between "the core conduct comprising the conspiracy" and the arbitration agreement. *Palladino*, 2024 WL 3594569, at *13-14, 17. MLB and MLBPA do not and cannot make this showing here. Plaintiffs' claims against them do not bear any relationship with or dependency on any provision in the Fanatics.com TOU; these claims stem from the injury they suffered and will continue to suffer when they purchase MLB Trading Cards from

---

[16] The *Maldonado* plaintiffs, too, failed to examine Delaware precedents or to give any consideration as to how the "intertwinedness" element limits application of equitable estoppel. These arguments were accordingly not before the *Maldonado* court. *See* No. 1:22-cv-02289-ALC, ECF No. 70.

Fanatics on any platform (including Topps.com) or at brick-and-mortar locations. Plaintiffs'

claims against MLB and MLBPA are therefore not arbitrable.

**D.    Even if some or all claims are arbitrable, Moving Defendants provide no grounds
for staying the remaining claims.**

Moving Defendants ask the Court for a stay of all non-arbitrable claims. In general,

movants bear a "heavy burden" to justify granting a stay of non-arbitrable claims pending

resolution of arbitration. *SDJ Invs., LLC v. Collector's Coffee Inc.*, No. 21-2070, 2022 WL

17097231, at *2 (2d Cir. Nov. 22, 2022) (quoting *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750

(2d Cir. 1991)). It is improper to stay the action here, because the pending motions for arbitration

have no bearing at all on 2 out of 5 Plaintiffs, or on 5 out of 8 Defendant groups. Put differently,

of 40 total claims asserted (8 counts by each of 5 Plaintiffs), a full win on the pending motions to

compel arbitration would impact only 10 out of 40 claims. *See supra* at 4 (Figures 1 and 2

delineating which claims are and are not impacted by this motion); *Walker v. Metro N.*

*Commuter R.R.*, No. 23-9883, 2024 WL 4266261, at *9 (S.D.N.Y. Sept. 23, 2024) (denying stay

on the ground that the arbitrable claims "do not 'predominate' the current lawsuit") (citing

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d. Cir. 1987)).

Fanatics argues that a stay of non-arbitrable claims is appropriate here in light of the

"significant factual overlap" among the claims, and because arbitral decisions may have

"preclusive effect" as to issues in Court. Fanatics Br. at 17. Fanatics fails to explain how the

confidential, non-precedential rulings of an arbitrator not bound by the law would have

preclusive effect over this Court's consideration of the claims before it. In reality, efficiency

concerns weigh *against* a stay here, because closely related issues of law and fact are already

being heard by this Court in the *Panini* litigation, and will be heard in the indirect purchaser

actions, none of which implicate arbitration clauses.

A stay would also serve no purpose because Plaintiffs Bubnick, Davidov, and Madar will not pursue individual arbitration of any of the claims they assert in this action. *See* Ex. 2 ¶ 4; Ex. 4 ¶ 5; Ex. 5 ¶ 8. When plaintiffs disclaim any intention to arbitrate, "there is no risk that the [] judge and an arbitrator will reach inconsistent results with respect to plaintiffs' claims." *Cabrera v. CVS Rx Servs., Inc.*, No. 17-5803, 2018 WL 1367323, at *6 (N.D. Cal. Mar. 16, 2018). This disclaimer is a rational economic decision; the AAA's own Administrative Fee Calculator reveals that a consumer arbitration would be subject to a $225 administrative fee. *See* Ex. 11 (AAA-ICDR Arbitration Administrative Fee Calculator results). Even when accounting for Fanatics' promise to reimburse fees for claims later deemed not "frivolous" (Fanatics.com TOU ¶ 22), use of this arbitration procedure would result in an outlay of $225, a wholly uneconomic proposition for claims worth $100 (or far less).

Finally, Plaintiffs would face prejudice on account of delay if their non-arbitrable claims were stayed. *See CollegeStreet Import & Export (Tianjin) Co. v. TL x HF, LLC*, 777 F. Supp. 3d 238, 251 (S.D.N.Y. 2025) ("In exercising its discretion [regarding a request to stay the balance of proceedings], a court considers, among other factors, the interests of plaintiffs and the prejudice that may result from delay[.]"). Plaintiffs, who wish to purchase more cards, request that the Court "order, pursuant to 15 U.S.C. § 26, permanent injunctive relief preventing Defendants from continuing their unlawful acts in violation of the Sherman Act." FAC ¶ 241(e). Any stay of non-arbitrable claims would delay this injunctive relief and allow inflation of trading card prices to continue.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Moving Defendants' motion to compel arbitration and stay.

DATED: October 10, 2025                    Respectfully submitted,

*/s/ John Radice*
John Radice
Kenneth Pickle
Daniel Rubenstein
A. Luke Smith
Kenneth Walsh
**RADICE LAW FIRM, PC**
475 Wall Street
Princeton, NJ 08540
Telephone: (646) 245-8502
Facsimile: (609) 385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com
drubenstein@radicelawfirm.com
lsmith@radicelawfirm.com
kwalsh@radicelawfirm.com


*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the number of words in the foregoing memorandum of law complies with Local Rule 7.1(c) and Section A(2)(h) of Judge Swain's Individual Practices. The memorandum of law contains 7,378 words, excluding the case caption, table of contents, table of authorities, signature blocks, and this certification, as counted by Microsoft Word.


Dated: October 10, 2025                    */s/ John Radice*
                                           John Radice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 10, 2025.


Dated: October 10, 2025                              <u>*/s/ John Radice*      </u>
                                                     John Radice