

**THE RADICE LAW FIRM**

475 Wall St., Princeton, NJ 08540  |  Tel: (646) 245-8502  |  Fax: (609) 380-0745  |  jradice@radicelawfirm.com

<u>**Via ECF**</u>

May 6, 2026

The Honorable Laura Taylor Swain, Chief District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> Re:  *Scaturo et al. v. Fanatics, Inc. et al.*, No. 1:25-cv-02202-LTS-VF (S.D.N.Y.)

Dear Chief Judge Swain:

We write to update the Court on the status of Plaintiffs' efforts to prepare a Second Amended Class Action Complaint in the above-captioned action. As explained further below, absent an opportunity for targeted discovery, Plaintiffs currently are unable to obtain data that would cure the pleading deficiencies identified in the Court's March 23, 2026 Memorandum Opinion and Order granting Defendants' motion to dismiss Plaintiffs' First Amended Class Action Complaint, ECF No. 190. Plaintiffs accordingly request leave to pursue the limited discovery described below. In the event the Court will not entertain this request, Plaintiffs respectfully seek voluntary dismissal of the action without prejudice under Rule 41(a)(1) of the Federal Rules of Civil Procedure. Defendants have indicated that they oppose both requests.

**Background**

The Court's March 23, 2026 Memorandum Opinion and Order held that Plaintiffs' allegations of injury failed in part because they lacked "specific factual allegations regarding the prices of trading cards and the timing of price changes relative to allegedly important events." ECF No. 190 at 22 (referring to NBA and NFL trading card allegations). *See also id.* at 24 ("While named Plaintiffs Davidov and Madar allege that they purchased MLB Trading Cards before the FAC was filed, they do not allege adequately that they purchased cards at inflated prices.") (internal citations omitted). However, the Court granted Plaintiffs permission to seek leave to file a "further amended complaint," curing this and other identified pleading deficiencies. *Id.* at 29.

Counsel for Plaintiffs has investigated the possibilities for obtaining and analyzing price data corresponding to Fanatics' direct sales of NFL, NBA, and MLB trading cards. Our understanding of the Court's decision dictates that the Court will regard as futile any amended complaint that does not analyze such data. Based on our investigation to date, we believe that

these data are in Fanatics' sole possession. Unlike primary market price data in other industries, which counsel may freely purchase from vendors,[1] Plaintiffs believe that data reflecting sales by Fanatics are not available from any source other than Fanatics itself.

**Strictly Limited Pre-Amendment Discovery**

Plaintiffs accordingly request leave to obtain the data already prepared and produced by Fanatics in response to Panini's Request for Production No. 13 in the related *Panini* litigation:

All Documents concerning sales data for Sports Trading Cards and Competing Products sold by You during the Relevant Time Period, including, but not limited to:
a. Monthly and annual revenue figures by product line, release, or collection;
b. Unit sales data by product line, release, or collection;
c. Profit margin data by product line, release, or collection;
d. Market share analyses or estimates;
e. Sales forecasts and actual sales results comparisons; and
f. Price lists, pricing strategies, and price changes over time.

*Panini Am., Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-LTS-VF (S.D.N.Y.), ECF No. 195-1 at 50-51. Fanatics agreed to produce to Panini non-privileged data responsive to the full request. *Id.* at 51. Plaintiffs here seek only re-production of the same data.

We are aware of this Court's precedent ruling that a plaintiff is not entitled to engage in "fishing expedition"-type discovery "lodged for the purpose of obtaining extra information prior to amending a complaint." *K.A. v. City of N.Y.*, 2021 WL 5889254, at *2 (S.D.N.Y. Dec. 13, 2021) (Swain, C.J.) (collecting cases). Plaintiffs respectfully urge, however, that the limited data discovery they seek bears no resemblance to such a "fishing expedition." We do not request leave to seek information necessary to alter or piece together a theory of recovery. Rather, the theory and core allegations remain the same, and the only purpose for which Plaintiffs seek Fanatics' sales data is to articulate empirical proof of injury. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) ("[S]ome latitude may be appropriate where a plausible claim may be indicated based on what is known, at least where, as here, some of the information needed may be in the control of [the] defendants…Where modest discovery may provide the missing link, the district court has discretion to allow limited discovery and, if justified, a final amendment of the complaint.") (internal quotation marks omitted).

The decision in *Prince George's Cty., Md. v. Wells Fargo & Co.*, 397 F. Supp. 3d 752 (D. Md. 2019), supports Plaintiffs' request. In *Prince George's Cty.*, two counties alleged that Wells Fargo engaged in a predatory lending scheme in violation of the Fair Housing Act. *Id.* at 755. The counties sued in their own individual capacities, seeking economic damages in the amount of, *inter alia*, the cost of foreclosure proceedings and the loss of property tax revenue allegedly caused by Wells Fargo's conduct. *Id.* at 756. The court held that the plaintiff counties failed to plausibly allege their tax revenue injuries, despite their pleading that "[r]outinely

---

[1] *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 2019 WL 3934470, at *2 (N.D. Ohio Aug. 20, 2019) ("[Plaintiffs' expert's] analysis is premised on data compiled by, and available for purchase from, healthcare company IQVIA.")

maintained property tax and other financial data allow precise calculation of the property tax revenues Plaintiffs have lost." *Id.* at 762. Nonetheless, it granted the counties leave to amend the tax damages claim and invited them to petition for "some limited and carefully tailored discovery that might permit the Counties to buttress their claim and the methods they feel may better explain it." *Id.* at 763.[2]

The "limited and carefully tailored discovery" Plaintiffs request here is comparable to the form described in *Prince George's Cty.* It would be cabined to a single, already-collected data set and provided for the sole purpose of articulating empirical evidence of Plaintiffs' injury when no other method is possible. Plaintiffs are confident that these data will substantiate their claims of financial injury; as courts recognize generally, "[t]he danger to customers from monopolization of the production level is the danger that the monopolist will raise prices and restrict output." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 123 (2d Cir. 2007). More specifically, as to the facts underlying this action, this Court already recognized as plausible Panini's allegations that "Fanatics currently possesses monopoly power as demonstrated through its ability *to set prices* and exclude competitors." *Panini Am., Inc. v. Fanatics, Inc.*, 2025 WL 753954, at *6 (S.D.N.Y. Mar. 10, 2025) (emphasis added).

Plaintiffs recognize the Court's conclusion that this power of monopolists alone is insufficient to plead injury, ECF No. 190, at 27, but respectfully urge that it provides a sufficient basis to allow limited discovery of price data. This is especially true when comparable data are unavailable from other sources.

In the event the Court would like to receive further briefing on this request, Plaintiffs are prepared to provide it.[3]

**Voluntary Dismissal**

If the Court is not inclined to grant Plaintiffs' request for limited pre-amendment discovery or to receive further briefing on this request, Plaintiffs seek voluntary dismissal of the action without prejudice pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. Under Rule 41(a)(1), unilateral dismissal without prejudice is possible as long as the defendants have not "serve[d] either an answer or a motion for summary judgment." Defendants here have served neither. Courts in this District recognize that, absent "extreme circumstances" not present here, unilateral dismissal without prejudice remains available even following the filing of a Rule 12 motion to dismiss, as long as the court has not converted the motion into one for summary judgment. *See Estate of Saufer v. Citigroup Inc.*, 2015 WL 3429112, at *3-4 (S.D.N.Y. May 27, 2015); *Fredericks v. Desrochas*, 2024 WL 5506181, at *1-2 (S.D.N.Y. Nov. 12, 2024)

---

[2] One month later, another court in the District of Maryland reached the same conclusion on a similar claim, "allow[ing] the Counties to take limited and targeted discovery and then file an amended complaint to address the deficiencies identified in this Memorandum Opinion." *Montgomery Cty., Md. v. Bank of Am., Corp.*, 421 F. Supp. 3d 170, 192 (D. Md. 2019).

[3] Further, if the Court were to grant the request for limited discovery, Plaintiffs request an additional extension of the May 13, 2026 deadline to seek leave to amend the complaint, ECF No. 192, until one month following receipt of the data.

(extending the same principle to motions to dismiss accompanied by declarations), *report & recommendation adopted*, 2025 WL 1018870 (S.D.N.Y. Apr. 4, 2025).


Sincerely,

*/s/ John Radice*
John Radice


**Individual Practice 2(b)(ii) Certification**

Pursuant to the Court's Individual Practice 2(b)(ii), counsel for Plaintiffs conferred with counsel for Defendants regarding the requested relief. Counsel for Defendants indicated that they oppose the motion.


cc: Counsel for all parties (*via* ECF)